UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| AMBER GRASSE, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 1:18-cv-00021-JPH-MJD ) |
| SCOTT MELLINGER Sheriff, JENNIFER SIMMONS COMMANDER, TYLER JUGG COMMANDER, | ) ) ) ) |
| Defendants. | ) ) |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Amber Grasse alleges that she missed two doses of her prescription medication while incarcerated in the Madison County Jail, causing her to suffer a miscarriage. She has sued the Madison County Sheriff and two of his employees for denial of adequate medical care and violation of the Americans with Disabilities Act ("ADA") and Rehabilitation Act ("RA"). Dkt. 1-2. Defendants have moved for summary judgment. Dkt. [39]. For the reasons that follow, that motion is **GRANTED**.

## I.
## Facts and Background

Because Defendants have moved for summary judgment under Rule 56(a), the Court views and recites the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted).

On November 28, 2015, Madison County sheriff deputies arrested Ms. Grasse at her home. Dkt. 42-1 at 1–2. She arrived at the Madison County Jail

1

(the "Jail") just after midnight. Dkt. 40-1 at 3–4 (Grasse Dep. at 92–93). At the time, Ms. Grasse was taking prescribed anticoagulant injections twice a day because she was pregnant. Dkt. 42-1 at 1. She had not yet taken her second injection when she was arrested. *Id.* at 2.

Before arriving at the Jail, Ms. Grasse asked an arresting officer if she could have her injection, explaining that she believed she would suffer a miscarriage if she didn't take it. *Id.* at 2–3. The officer—who is not a defendant in this case—told her that she "would have to talk to Medical" when she arrived at the jail. Dkt. 40-1 at 3 (Grasse Dep. at 92). At the jail, Ms. Grasse told the book-in officer that she was pregnant, was taking anticoagulant injections, and "needed to talk to Medical." *Id.* at 5 (Grasse Dep. at 96). She again explained that she believed she would suffer a miscarriage without the injections. Dkt. 42-1 at 3. The officer—who also is not a defendant in this case—did not let her have the injection and told her that medical staff would not be at the jail until morning. Dkt. 40-1 at 5 (Grasse Dep. at 96).

Ms. Grasse spent about 11 hours at the Jail and was released just after 11:00 a.m. *Id.* at 4 (Grasse Dep. at 93). During that time, she tried to follow up with officers to ask them for medical care, but they would not respond. Dkt. 42-1 at 4; *id.* at 6–7 (Grasse Dep. at 99–100). Those officers also are not defendants in this case. Ms. Grasse did not speak to medical staff or receive her injections while at the Jail. Dkt. 42-1 at 4. She missed two injections— one for the evening of November 28 and one for the morning of November 29— and the following month suffered a miscarriage. *Id.*

2

At the time Ms. Grasse was at the Jail, medical staff were on-site from 7:00 a.m. through 11:00 p.m. every day. Dkt. 40-2 at 2. If an inmate needed medical care, an appointment would be made; if it were an emergency, Jail policy required officers to contact medical staff. *Id.* at 2–3. The medical staff would evaluate the situation and "give direction to Jail personnel accordingly." *Id.* at 3. All Jail personnel were trained on these policies. *Id.*

Ms. Grasse brings claims against Defendants for constitutional and statutory violations related to the lack of medical care she received at the Jail. Dkt. 1-2; dkt. 30. Defendants have moved for summary judgment. Dkt. 39.

## II.
## Applicable Law

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must inform the court "of the basis for its motion" and specify evidence demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must "go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324.

In ruling on a motion for summary judgment, the Court views the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d at 584 (citation omitted).

## III.
## Analysis

### A. Abandoned Claims

Defendants argue that they are entitled to summary judgment on the individual-capacity claims against them and on Ms. Grasse's Emergency Medical Treatment and Active Labor Act claim. Dkt. 41 at 6–7, 20–21. Ms. Grasse's response does not address those arguments, *see* dkt. 43, so she has "abandoned the claim[s]," *Maclin v. SBC Ameritech*, 520 F.3d 781, 788 (7th Cir. 2008). Defendants' motion for summary judgment on those claims is **granted**.

Ms. Grasse's only remaining claims are therefore her Section 1983 *Monell* claims and her ADA and RA claim.

### B. *Monell* Liability Under Section 1983

Ms. Grasse's claim against the Madison County Sheriff in his official policymaking capacity is a *Monell* municipal-liability claim. *Miranda v. County of Lake*, 900 F.3d 335, 344 (7th Cir. 2018) (citing *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658 (1978)). A municipality cannot be held vicariously liable under section 1983 for the actions of its agent or employee. *Los Angeles Cty. v. Humphries*, 562 U.S. 29, 35–36 (2010) (explaining *Monell*, 436 U.S. 658). Rather, a municipality can be liable for only its own actions and corresponding harm. *Id.*

"The critical question under *Monell* remains this: is the action about which the plaintiff is complaining one of the institution itself, or is it merely one untaken by a subordinate actor?" *Glisson v. Ind. Dept. of Corr.*, 849 F.3d 372,

381 (7th Cir. 2017) (*en banc*). An action is one of the "institution itself," *id.*, when the municipality's "official policy, widespread custom, or action by an official with policy-making authority was the 'moving force' behind [the] constitutional injury," *Dixon v. Cty. of Cook*, 819 F.3d 343, 348 (7th Cir. 2016) (citing *Monell*, 436 U.S. at 658; *City of Canton v. Harris*, 489 U.S. 378, 379 (1989)); *see Humphries*, 562 U.S. at 36 (reciting the "list of types of municipal action" that can lead to liability).

The "stringent" and precise grounds for *Monell* liability are required by section 1983. *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 402–404, 415 (1997); *see Humphries*, 562 U.S. at 36. Courts must apply "rigorous standards of culpability and causation" to prevent municipal liability from collapsing into *respondeat superior* liability, which section 1983 prohibits. *Brown*, 520 U.S. at 405, 415.

1. **Express Policy**

*Monell* liability under an express-policy theory applies when "a policy explicitly violates a constitutional right when enforced." *Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005). In other words, the "policy in and of itself" must cause constitutional violations. *City of Okla. City v. Tuttle*, 471 U.S. 808, 822 (1985); *accord J.K.J. v. Polk County*, 960 F.3d 367, 377–78 (7th Cir. 2020) (en banc).

The Sheriff argues that Ms. Grasse cannot establish *Monell* liability because no express policy violated Ms. Grasse's constitutional rights. Dkt. 41 at 11–12. Ms. Grasse responds that the Sheriff's policy triggers *Monell* liability

because she did not receive required immediate treatment and because medical staff were not present on-site. Dkt. 43 at 14, 16.

Here, the Sheriff's policy is undisputed. *See* dkt. 43 at 7–8. At the time of Ms. Grasse's detention, medical staff were at the jail from 7:00 a.m. through 11:00 p.m. every day. Dkt. 40-2 at 2. If at book-in an inmate "expressed or demonstrated a need for medical care," a medical appointment would be scheduled. *Id.* at 2. And if there was an emergency medical need, jail staff would contact the medical providers immediately. *Id.* Similarly, if an inmate needed care when no medical staff were on-site, jail officers would page the medical providers, who would give direction to jail staff. *Id.* at 2–3.

The policy therefore provided an avenue for immediate care—if medical providers were not on-site, jail staff were to contact them immediately and follow their directions. *Id.* That is enough to defeat *Monell* liability under an express-policy theory, because that policy "in and of itself" does not cause constitutional violations. *Tuttle*, 471 U.S. at 822; *accord J.K.J.*, 960 F.3d at 377–78. Indeed, there "can be little doubt that on its face" the policy is constitutional because—if followed—it would have provided Ms. Grasse immediate medical care if she identified an emergency need. *Harris,* 489 U.S. at 386–87 (finding the same for a jail's policy to take inmates who need medical care to a hospital). That is far different than, for example, an unconstitutional "policy requiring jail staff to throw away all prescription medications without implementing an appropriate mechanism for providing alternative treatment." *King v. Kramer*, 680 F.3d 1013, 1021 (7th Cir. 2012).

*Ortiz v. City of Chicago*, which Ms. Grasse relies on, does not teach otherwise. 656 F.3d 523, 530 (7th Cir. 2011). That case applied the duty to "reasonably respond to medical complaints" under a policy "prohibiting detainees from taking medicine in lockup unless . . . transported to [the] hospital." *Id.* at 531. But *Ortiz* did not "comment on whether that policy is wise as a general matter"—much less whether it is constitutional—and did not address *Monell* liability. *Id.* Instead, it examined whether "*each officer*" acted reasonably. *Id.* at 531–32. This case is the opposite, as Ms. Grasse pursues *Monell* liability and not individual liability. Dkt. 43 at 14–18.

Because Ms. Grasse pursues only *Monell* liability, the Court does not address whether jail staff followed the express policy, or whether Ms. Grasse's constitutional rights were violated during her detention. Those questions are separate from the express-policy theory that Ms. Grasse relies on. *See* dkt. 43 at 14–18; *Glisson*, 849 F.3d at 379 (Under *Monell*, the "critical question . . . is whether a municipal . . . policy or custom gave rise to the harm (that is, caused it), or if instead the harm resulted from the acts of the entity's agents."). Moreover, Ms. Grasse does not argue that jail staff had a custom of violating medical-care policies. *See* dkt. 43 at 14–18; *Glisson*, 849 F.3d at 379.

Because the Sheriff's express policy itself does not violate constitutional rights when enforced, there is no triable issue of fact on whether the policy injured Ms. Grasse. Defendants are therefore entitled to summary judgment on this *Monell* theory.

### 2. Failure to Train

The Sheriff argues that no designated evidence shows a triable issue of fact on Ms. Grasse's failure-to-train *Monell* theory. Dkt. 47 at 10–12. Ms. Grasse contends that jail staff should have been trained to provide urgent medical care, and that whether any training was adequate should be for a jury to decide. Dkt. 43 at 18.

"In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). But failure to train is the "most tenuous" *Monell* theory. *Id.* "A pattern of similar constitutional violations" is "ordinarily necessary" to establish the claim. *Id.* at 62. A single incident can be enough only when a "'highly predictable' constitutional danger" demonstrates the "obvious need for specific legal training." *Id.* at 64–68.

Here, Ms. Grasse argues that the "need for medical care, including urgent medical care, is certainly a 'recurring situation' for a county sheriff's department." *Id.* at 18. But she has designated no evidence of similar constitutional violations. *See* dkt. 43 at 2–9. There is therefore no triable issue of fact about whether the Sheriff had a pattern of failing to provide constitutionally sufficient medical care—"*Monell* claims require evidence, but [Ms. Grasse] has offered none." *Barnes v. City of Centralia, Ill.*, 943 F.3d 826, 832 (7th Cir. 2019).

8

The Sheriff also cannot be liable under a failure-to-train theory based on a single incident. The undisputed designated evidence shows that "[a]ll jail personnel were trained" on the policy that emergency needs should be raised to medical staff immediately, even if medical staff are not present at the time. Dkt. 40-2 at 2–3. Ms. Grasse therefore has not shown that the Sheriff's training was insufficient, much less that it shows a "conscious choice" to provide constitutionally deficient medical care. *Rice v. Correctional Med. Servs.*, 675 F.3d 650, 675 (7th Cir. 2012); *see Jenkins v. Bartlett*, 487 F.3d 482, 492 (7th Cir. 2007) ("A municipality will be held liable for the violation of an individual's constitutional rights for failure to train its officers only when the inadequacy in training amounts to deliberate indifference to the rights of the individuals with whom the officers come into contact.").

There is therefore no triable issue of fact on Ms. Grasse's failure-to-train claim, and Defendants are also entitled to summary judgment on this theory of *Monell* liability.[1]

### C.     Americans with Disabilities Act and Rehabilitation Act

The ADA and RA generally prohibit public entities, including prisons, from discriminating against disabled individuals. *See Pennsylvania Dep't of Corrections v. Yeskey*, 524 U.S. 206, 210 (1998). "To prove a *prima facie* case of discrimination," Ms. Grasse "must show: (1) that [s]he is a qualified individual with a disability; (2) that [s]he was denied the benefits of the

---

[1] Because Ms. Grasse cannot establish *Monell* liability for the reasons above, the Court does not address Defendants' qualified-immunity argument or whether the standard for medical care is deliberate indifference or objective reasonableness.

services, programs, programs, or activities of a public entity or otherwise subjected to discrimination by such an entity; and (3) that the denial or discrimination was 'by reason of' [her] disability." *Lacy v. Cook County, Ill.*, 897 F.3d 847, 853 (7th Cir. 2018) (citation and quotations omitted).[2]

Defendants argue that Ms. Grasse has not designated evidence supporting the third element—that her medical care was delayed or denied because of a disability. Dkt. 47 at 13–14. Ms. Grasse contends that a reasonable jury could find that she was denied care based on her disability because Defendants can provide medical care to inmates but did not provide care to her. Dkt. 43 at 24.

It is not enough that Ms. Grasse was disabled and did not receive medical care. *Rowling v. Ill. Dept. of Corrections*, No. 3:16-cv-459-NJR-MAB, 2019 WL 3628741 at *5 (S.D. Ill. May 10, 2019) (quoting *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) ("The ADA does not create a remedy for medical malpractice.")). Instead, to succeed on her claim, she must "show[ ]that the reason for [her] deprivation is [her] disability." *See Wisc. Comm. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 753 (7th Cir. 2006). However, Ms. Grasse has not designated evidence to support a reasonable inference that she did not receive medical care because of her disability.

Ms. Grasse points only to the Jail's medical-care policy which, as explained above, allowed inmates to receive emergency medical care even when

---

[2] The same analysis governs the ADA and RA, so the Court considers them together. *See Jaros v. Ill. Dept. of Corrections*, 684 F.3d 667, 671–71 (7th Cir. 2012).

10

no medical staff were on-site. Dkt. 43 at 22. But that policy cannot create a triable issue of fact. Nothing in the policy, when enforced consistently, would delay or deny treatment for inmates with disabilities as compared to other inmates. *See Wisc. Comm. Servs.*, 465 F.3d at 753. And Ms. Grasse has not designated any evidence that the policy was enforced inconsistently—much less inconsistently in a way that denied her care based on her disability. *See id.*; *accord Beaver v. Melotte*, No. 08-C-187, 2008 WL 4610317 at *1 (E.D. Wisc. Oct. 15, 2008) ("The ADA does not protect against every injury suffered by disabled persons—it merely guards against injuries they suffer *because* they are disabled.").

*Corbin v. Indiana*, which Ms. Grasse relies on, does not hold otherwise. No. 3:16-cv-602-PPS/MGG, 2018 WL 1920711 (N.D. Ind. Apr. 23, 2018). There, the court held that an ADA and RA claim survived a motion for judgment on the pleadings based on allegations that the plaintiff was placed in solitary confinement "only because of his disability," preventing him from accessing mental health services. *Id.* at *4. At that judgment-on-the-pleadings stage, allegations were enough. Here, on summary judgment, evidence of causation is required, and Ms. Grasse has provided none. *See Sommerfield v. City of Chicago*, 863 F.3d 645, 649 (7th Cir. 2017) (explaining that on summary judgment, "conclusory statements not grounded in specific facts are not enough" and the "parties are required to put their evidentiary cards on the table").

A reasonable jury therefore could not find that Ms. Grasse was denied medical care because of a disability, so Defendants are entitled to summary judgment on this claim.[3]

## IV.
## Conclusion

Defendants' motion for summary judgment is **GRANTED**. Dkt. [39]. Final judgment will issue by separate entry.

**SO ORDERED.**

Date: 9/28/2020

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

Paul Thomas Belch
TRAVELERS STAFF COUNSEL
pbelch@travelers.com

Robert Francis Dolack
TRAVELERS STAFF COUNSEL OFFICE (Indianapolis)
rdolack@travelers.com

Christopher Carson Myers
CHRISTOPHER C. MYERS & ASSOCIATES
cmyers@myers-law.com

---

[3] Because no reasonable jury could find that Ms. Grasse was denied medical care because of a disability, the Court does not address whether Ms. Grasse had a disability and **OVERRULES as moot** Defendants' objections to portions of Ms. Grasse's designated evidences. Dkt. 47 at 3–5. For the same reason, the Court does not address whether Ms. Grasse could receive compensatory damages under the ADA or RA.